**In re SEL–O–RAK CORPORATION, Debtor.**

**Bankruptcy No. 82–00490–BKC–JAG.**

United States Bankruptcy Court, S.D. Florida.

April 8, 1982.

Irving Mark Wolff, P.A., Miami, Fla., for Sel-O-Rak Corp.

John L. Britton, Britton, Cohen, Kaufman, Benson & Schantz, Miami, Fla., for Associates Commercial Corp.

**ORDER ON MOTION OF DEBTOR–IN–POSSESSION FOR AUTHORITY TO USE CASH PROCEEDS, ETC.**

JOSEPH A. GASSEN, Bankruptcy Judge.

The court is confronted with the ever vexing problem at the outset of the chapter 11 proceedings of whether or not to permit the debtor-in-possession to use cash collateral proceeds over the vehement objection of the lender who is secured by the collateral in addition to having other forms of guaranty. This chapter 11 case was filed on March 22, 1982 and the motion before the court (C.P. No. 7) on March 31, 1982. A hearing which the court deems to be a preliminary hearing under 11 U.S.C. § 363(c) was held on April 6, 1982. The first meeting of creditors under 11 U.S.C. § 341 is scheduled for April 19, 1982.

Maurice Cohen, president and owner of the debtor-in-possession, also owns Accoa Corporation which produces a product utilized by the debtor-in-possession in connection with its business. Both corporations operate from the same building which is

owned by Cohen and his wife. Their equity in that building is approximately $900,000.

The debtor-in-possession and Accoa jointly and severally owe Associates Commercial Corporation (Associates) approximately $2,100,000 on which interest is accruing at the rate of approximately $40,000 per month. No payments of principal or interest have been made in a number of months. No loan documents are in evidence before the court and the court has not been enlightened as to what payments were supposed to have been made by the obligors. It is agreed that Associates is the primary lender and creditor of the debtor-in-possession and that it has a security interest in the inventory, accounts receivable, machinery and equipment of the debtor. It also had the right to notify account-debtors of the debtor-in-possession to remit payment on those accounts directly to Associates. It in fact did so, and that action caused Sel-O-Rak to file this chapter 11 proceeding and the motion for authority to use cash proceeds.

Maurice Cohen testified that the debtor-in-possession had been hit unexpectedly hard by the recession. It was recovering and had plans for expansion which Associates had informally agreed to fund. Instead of increasing its financing, in September, 1981 Associates called its existing loan. Sel-O-Rak was almost forced to shut down, it lost several contracts and had to refuse others, including a $1,100,000 contract from Allied Stores. It continued to lose money for several months, but in March, 1982 there was a "profit" of approximately $20,000 without any debt service taken into consideration. He testified that the company now has a backlog of orders and he looks for continued and increasing profitability in the months to come. He also testified that the company expects to receive within the next couple of weeks the settlement of a fire loss claim of approximately $200,000. There is other evidence before the court that this settlement may be as low as $25,000.

The court must decide under 11 U.S.C. § 363 whether or not the lender will have adequate protection if the court permits the debtor-in-possession to use the cash collateral proceeds. On this issue the debtor-in-possession has the burden of proof. Sel-O-Rak's portion of the obligation to Associates is approximately $1,400,000 and Accoa's portion is approximately $700,000. These loans are cross-guaranteed and cross-collateralized by the two corporations as well as guaranteed by Maurice Cohen and his wife. There is no evidence before the court as to what assets are owned by the Cohens or either of them other than the stock of the debtor-in-possession, the stock of Accoa and the property upon which these businesses operate.

From the testimony adduced, the court finds and concludes that the accounts receivable of the debtor-in-possession have a value of approximately $339,000 and that the inventory has a value of approximately $1,300,000. Both the debtor-in-possession and Associates offered the testimony of experts to establish the value of the Sel-O-Rak and the Accoa machinery and equipment. These experts, Forcier for the debtor and Helfond for the creditor, took different approaches to establishing the value of the machinery and equipment and came to widely different conclusions based upon the difference in approaches. The evidence is that Helfond conducted his survey of the items to be appraised in great haste and based his opinions as to value upon what the items would bring if liquidated at an auction. Auctioneering is a principal business of Helfond. Forcier used a market value approach which results in an evaluation 15% less than replacement costs. His opinion as to market value was $742,550 as to Accoa and $2,404,205 as to Sel-O-Rak. Forcier is primarily a dealer in machinery and equipment and he conceded that upon what he called "leisurely liquidation" those assets would bring only approximately 70% of the market value and upon forced sale significantly less than that. There is no direct evidence as to the "liquidation value" of the accounts receivable or the inventory. Nor has the court been informed as to what the loan to value ratios were at any point during the history of the loans in question.

Associates had its guidelines but there is no evidence that advances of funds always followed those guidelines.

Both the debtor-in-possession and the creditor agree that if the debtor-in-possession's motion is not granted the debtor will be put out of business and will have no chance for reorganization under chapter 11. The debtor argues that this result is to be avoided at this stage of the proceedings under the provisions and philosophy of the Bankruptcy Code and asserts that the creditor has adequate protection. The creditor argues that this debtor should in fact be put out of business because there are no values in excess of its loan that can be utilized for reorganization.

Maurice Cohen impressed the court as being an alert businessman with much pride in and knowledge of his business. He testified that the recessionary cycle in his business had "bottomed out" and that the March figures indicate the "turn around." This of course remains to be seen and the court has not been furnished with a crystal ball as part of its equipment. However, chapter 11 of the Bankruptcy Code is designed to give a harried debtor breathing time and a chance to reorganize.

The court finds that the liquidation value of all assets available to the creditor in the event of ultimate nonpayment exceeds the amount of the present indebtedness and that there is a reasonable likelihood that the debtor-in-possession will prevail at a final hearing under 11 U.S.C. § 363(e) which will be set at the request of the creditor but not earlier than June 8, 1982.

Based upon the foregoing, it is

ORDERED as follows:

1. The motion of the debtor-in-possession for authority to use cash proceeds and for other relief is granted to the extent and under the conditions set forth herein.

2. The debtor-in-possession may collect and utilize the cash collateral proceeds of its accounts receivable until further order of court. Associates shall cooperate to expedite the accomplishment of this.

3. Associates is directed to account for sums it received from account debtors of the estate under its notification to them and to pay those sums to the debtor-in-possession unless directed otherwise by the court after hearing held upon the request of Associates.

4. The debtor-in-possession shall pay the proceeds of its fire loss claim to Associates forthwith upon receipt.